HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN MCCLINTIC,

    Plaintiff,

  v.

LITHIA MOTORS, INC.,

    Defendant.

CASE NO. C11-859RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Plaintiff Kevin McClintic's motion (Dkt. # 19) for preliminary approval of a class action settlement as well as non-party Dan McLaren's motion (Dkt. # 14) to intervene. No party has requested oral argument, and the court finds oral argument unnecessary. For the reasons stated below, the court DENIES the motion to intervene. Although the court makes several findings relevant to its decision on preliminary approval of the settlement, the court reserves ruling on the preliminary approval motion pending responses to several questions the court poses in this order. The clerk shall accordingly RENOTE that motion for November 2, 2011.

## II.  BACKGROUND

Defendant Lithia Motors, Inc. ("Lithia") operates a chain of car dealerships in the West and Midwest. In April 2011, it began a cellular-phone marketing campaign wherein nearly 58,000[1] people received a text message promoting a Lithia sale. Mr.

---
[1] The court uses round numbers throughout this order.

ORDER – 1

McClintic, a King County resident, was one of them. About a week later, 48,000 of them received a second text message from Lithia, although Mr. McClintic did not. No one received more than two messages. The parties reveal relatively little about Lithia's campaign. The court does not know, for example, how Lithia acquired the cell phone numbers for the people to whom it sent the text message. Lithia used a third-party vendor, DMEautomotive, LLC ("DME"), to conduct the marketing campaign, but it is not clear what DME's role was. No one explains why 10,000 fewer people received Lithia's second text message.

Some of the people who received Lithia's first text message tried to opt out of further messages. Mr. McLaren sent a reply text message stating "STOP," hoping to ensure that he received no more text messages from Lithia. Apparently, at least 6,000 other recipients of the text message made similar efforts to opt-out of future text messages from Lithia. Lithia's second barrage of text messages nonetheless reached these 6,000 people, along with 42,000 more people who had not attempted to opt out.

Mr. McClintic sued Lithia in King County Superior Court in April 2011. He asserted three Washington law claims: one for violation of the law restricting the use of automatic dialing and announcing devices, RCW § 80.36.400 ("ADAD Statute"); one for violation of the law restricting unsolicited commercial text messages, RCW § 19.190.060 ("Texting Statute"); and one for violation of the Washington Consumer Protection Act ("CPA"), RCW Ch. 19.86. He also alleged a violation of the automated dialing restrictions of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b). He hoped to pursue the TCPA claim on behalf of a class of all recipients of Lithia's text messages, and to pursue the Washington claims on behalf of a subclass of Washington recipients. Lithia timely removed the case to this court.

In July 2011, Mr. McLaren sued Lithia in the United States District Court for the District of Oregon. He raised only TCPA claims. Like Mr. McClintic, he seeks to

ORDER – 2

represent a class. Unlike Mr. McClintic, he proposes to represent a class of all recipients of Lithia's text messages and a subclass of recipients of a second message from Lithia after they attempted to opt out of further messages.

On July 5, 2011, the day Mr. McLaren filed his lawsuit, Mr. McClintic, Lithia, and DME mediated their dispute. From their prospective, the mediation was successful. Lithia agreed to pay class members $1.74 million. Class members would lay claim to the settlement fund by returning a postcard-sized from indicating whether they received one or two messages and whether they attempted to opt out. Claimants would receive $175 for the first text message. Claimants who made no effort to opt out of future messages but received a second message would receive another $175. Claimants who attempted to opt out but nonetheless received a second message would receive $500 for the second text message. In the event that class members failed to claim the entire $1.74 million fund, the balance would revert to the Legal Foundation of Washington as a *cy pres* recipient. Lithia agreed to pay Mr. McClintic's attorneys (hereinafter "class counsel") up to $600,000 in fees and expenses, subject to court approval. It also agreed to pay Mr. McClintic an incentive award of up to $10,000, again subject to court approval. Lithia also agreed to pay the costs of administering the settlement, up to $150,000. All told, Lithia agreed to pay up to $2.5 million in the settlement. In exchange, class members would release claims against both Lithia and DME arising from the text messages.[2]

Mr. McLaren does not like the settlement. On July 26, he filed a motion to intervene. He contends that the "secret and hurried settlement" between Mr. McClintic and Lithia impairs the interests of the class and subclass he hopes to represent. Intervention Mot. (Dkt. # 14) at 3. He points out that Mr. McClintic cannot serve as a

---

[2] The court has described the parties' proposed release in a single sentence. The release itself is five single-spaced paragraphs that take up more than a full page. Settlement Agr. ¶ III.C.8. It is unduly long, unduly complex, and (with apologies for the double negative) unduly unreadable. It is written by lawyers for lawyers. The parties nonetheless expect class members to knowingly consent to it, even though class members are unlikely to have the assistance of an attorney.

ORDER – 3

1  representative of a subclass of people who attempted to opt out of further messages,
2  because Mr. McClintic did not attempt to opt out.  He further suggests that Mr. McClintic
3  cannot represent the remainder of the class, because the "hurried and secret nature of the
4  impending settlement . . . raise[s] deeper issues about the conduct of both [Lithia and Mr.
5  McClintic], and suggests that another class plaintiff, along with class counsel, is
6  necessary to protect the [class and subclass that Mr. McLaren hopes to represent.]" *Id.* at
7  10.

## III.   ANALYSIS

### A.   Motion for Preliminary Approval of Class Settlement

The parties' agreement to settle this matter is not itself a sufficient basis for approving the settlement.  The settlement would require the court to certify a class and dispose of the claims of its members.  The court has an independent obligation to protect class members.  *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992).  Even for a class certified solely for purposes of settlement, the court must ensure that the class and its proposed representatives meet the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In addition, the court must ensure that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

Mr. McClintic proposes that the court ultimately certify a settlement class defined as follows:

> All persons within the United States who received a Text Message on their cellular telephones from Defendant or on Defendant's behalf, at any time during the Class Period, including all persons within the United States who received a second Text Message from Defendant or on Defendant's behalf after attempting to opt out after receiving a first Text Message.

Settlement Agr. ¶ III.B.  He occasionally suggests that this definition somehow includes a "subclass" consisting of people who unsuccessfully attempted to opt out.  He is mistaken.  He proposes to represent a single class.  A subclass is effectively a second class.  It

ORDER – 4

requires its own definition, and, as the court will soon discuss, it must independently satisfy the requirements of Rule 23.  Fed. R. Civ. P. 23(c)(5) ("[S]ubclasses . . . are each treated as a class under this rule.").  Using a class definition with a redundant mention of a subgroup that could perhaps serve as a subclass is not equivalent to creating a subclass.

The court first considers whether the class Mr. McClintic hopes to certify satisfies the four prerequisites of Rule 23(a):  numerosity, commonality, typicality, and adequacy of representation.  The court will then turn to whether the class satisfies one of the three sets of requirements of Rule 23(b).  After that, the court will address whether the settlement the parties have reached is, at least on a preliminary basis, fair, reasonable, and adequate.  The court's final task will be to decide whether to permit Mr. McLaren to intervene.

### 1. The Four Prerequisites of Rule 23(a):  Numerosity, Commonality, Adequacy, and Typicality

The class Mr. McClintic hopes to certify satisfies the numerosity and commonality requirements of Rule 23(a).  There are about 58,000 members of the class, and there is no question that joinder of that many individual plaintiffs would be impracticable.  Fed. R. Civ. P. 23(a)(1).  Lithia sent the same initial text message to every class member, and the same second message to about 48,000 class members.  From these common practices spring numerous common questions of fact and law.  Fed. R. Civ. P. 23(a)(2).

While the numerosity and commonality requirements focus on the class, the typicality and adequacy requirements focus on the class representative.  The representative must have "claims or defenses . . . [that] are typical of the claims or defenses of the class," and must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4).

Mr. McLaren points out that Mr. McClintic's claims are atypical of about 6,000 class members, because he did not attempt to opt out of additional text messages from Lithia.  This is significant, in the parties' view, because those who attempted to opt-out

ORDER – 5

have stronger TCPA claims. The TCPA prohibits the use of "automatic telephone dialing system" to make a call to a cellular phone without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). This provision applies to text messages just as it does to voice calls. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009). Apparently, there is at least an argument that some recipients of Lithia's first text message gave "express consent" to receive the message. The court uses the word "apparently" advisedly, because no one explains why this is so. By contrast, people who attempted to opt out unquestionably withdrew any existing consent to receive message. This presumably gives them a more ironclad TCPA claim, and also strengthens their claim to treble damages for a "willful[] or knowing[] violat[ion]" of the TCPA. 47 U.S.C. § 227(b)(3).

Rule 23(a)(3) does not, however, require a class representative's claims to perfectly mirror those of every class member. A representative's claims are typical "if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Mr. McClintic, like every other class member, was a recipient of Lithia's first text message. That he did not receive a second message or attempt to opt out is insufficient to make his claims fatally atypical. As the court will later discuss, the differences between Mr. McClintic's claims and those of other class members did not prevent him from ensuring that all class members received an adequate settlement. This cements the court's conclusion that Mr. McClintic's claims are typical.

Because Mr. McClintic's claims are atypical in some respects, there is a risk that he will not be an adequate class representative. He cannot claim the benefits accruing to those who received a second text message (including those who did so after attempting to opt out) and thus he has no obvious incentive to represent their interests. He might, for

ORDER – 6

example, have negotiated a payment of $500 to everyone who received a first text message, with no additional award for anyone who received a second text message.

But he did not.

Instead, Mr. McClintic negotiated a manifestly better deal for those who received a second text message, especially those who tried to opt out. They will receive $675, in contrast to people like Mr. McLaren who received only a single text message (who will receive $175) and to people who received two text messages without trying to opt out (who will receive $350). Mr. McClintic negotiated a settlement that rewarded class members whose claims were stronger than his own. The court observes that despite Mr. McLaren's insistence that Mr. McClintic cannot adequately represent people like him, he never suggests that the benefits he would receive are inadequate.

Lacking any argument that the settlement benefits he negotiated show Mr. McClintic to be an inadequate class representative, Mr. McLaren points to the process he used to obtain the settlement. As Mr. McLaren repeatedly informs the court, Mr. McClintic negotiated a settlement of a "hurried and secret nature." Mot. at 9; *see also* Mot at 1 ("hastily arranged"), at 3 ("secret and hurried settlement"), at 4 (describing "race to the bottom [to] hastily reach a settlement"). His complaint about secrecy borders on the absurd. Mr. McClintic filed the settlement agreement in this court. Anyone can view it. The settlement is, to say the least, a poorly kept secret. Mr. McLaren objects that the settlement was *negotiated* in secret; a position that belies his belief that he was entitled to a seat at the bargaining table. He cites no law granting him such an entitlement. Mr. McLaren correctly points out that the parties reached settlement quickly. He does not explain why this amounts to undue "haste." What Mr. McLaren calls "haste" is what the court calls avoiding protracted litigation. By resolving this action quickly, class counsel has likely saved class members money by reducing legal fees. The $600,000 maximum attorney fee award counsel requests is among the smallest the court has seen in a class

ORDER – 7

action. If this is the result of haste, then haste in this case is a virtue. There is no evidence of collusion between Mr. McClintic and Lithia, and the results of the negotiation belie any suggestion of collusion. By both the awards he negotiated and the process he used, Mr. McClintic has demonstrated himself to be an adequate class representative.

Questions of a class representative's adequacy dovetail with questions of his counsel's adequacy. Fed. R. Civ. P. 23(g)(4) ("Class counsel must fairly and adequately represent the interests of the class."). Mr. McClintic's counsel asks to be designated interim class counsel, pending certification of a settlement class. *See* Fed. R. Civ. P. 23(g)(3) (permitting appointment of "interim counsel to act on behalf of a putative class"). Each point the court raised regarding Mr. McClintic's adequacy applies equally to his counsel. The court has no difficulty concluding that counsel has provided and will likely continue to provide adequate representation for the proposed class. Mr. McLaren's counsel has no argument to the contrary. It argues instead that Mr. McClintic's counsel copied the complaint in this action from one of its complaints from a prior action, and invites the court to compare the credentials of the two groups of counsel. The court reminds Mr. McLaren's counsel that this is not a pageant. The court's task is not to pick who it believes will be the best class counsel (and the court in no way suggests that Mr. McLaren's counsel would have won that contest), it is merely to ensure that the class has adequate representation. The court appoints Mr. McClintic's counsel to serve as interim class counsel, pending a final decision on class certification.

### 2. The Requirements of Rule 23(b)(3)

The court now considers whether the proposed settlement class meets the requirements of Rule 23(b)(3).[3] Rule 23(b)(3) demands that "questions of law or fact

---

[3] Both the settlement agreement and Plaintiff's proposed order suggest that the proposed class satisfies the requirements of Rule 23(b)(2). Because Plaintiff's brief does not address Rule 23(b)(2), the court will not address it either.

ORDER – 8

common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When considering a settlement class, the court need not worry about whether the action could be manageably presented at trial. *Amchem Prods.*, *Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997).

The court lacks sufficient information to determine whether the factual and legal questions arising from Lithia's classwide practices (*i.e.*, sending the two rounds of text messages) predominate over individual questions. It is possible, for example, that questions pertaining to whether class members had at some point consented to the receipt of Lithia's text messages are individualized. The court has no idea, because no party presented any evidence on this issue.

While the predominance of common issues is in some doubt, the superiority of a class action is not. This suit is based on a narrow set of practices that led to text messages targeted at 58,000 people. There is no argument that 58,000 individual actions would be a better means of resolving these disputes.

### 3. Is the Settlement Fair, Reasonable, and Adequate?

The court now considers whether the settlement is fair, reasonable, and adequate. The court's findings on this issue are necessarily preliminary. If the court grants preliminary approval, class members will have a chance to weigh in, and their views might well lead the court to a different conclusion.

How much could each class member gain by going to trial? There is no concrete answer. All class members stand to reap the benefits of the TCPA, which provides either actual damages or statutory damages of $500 for text messages that violate it. 47 U.S.C. § 227(b)(3). No one suggests that any class member suffered actual damages as a result of Lithia's text messages. The TCPA also permits a court to treble damages for willful violations. *Id.* Washington residents have the opportunity to claim additional benefits

ORDER – 9

via Washington's Texting Statute and its ADAD Statute. Each of those, like the TCPA, permits actual damages or up to $500 in statutory damages. RCW § 80.36.400(3), § 19.190.090. Moreover, a violation of either statute is a per se violation of the Washington CPA, which permits the court to treble damages. RCW § 19.86.090. The court has no idea how many of the 58,000 members of the proposed class are Washington residents. Moreover, even assuming that a court could assess separate statutory penalties under Washington law and the TCPA for a single text message, no party addresses the likelihood that a court would actually do so. To summarize, every class member stood to gain at least $500 in statutory damages for each of the two Lithia text messages, and perhaps as much as three times that amount. Washington residents could theoretically do so for three separate statutory violations.

Class members who claimed the proposed settlement would receive $175 per text message, with a $325 premium for those who received a second text message after attempting to opt out. Even granting the dubious assumption that every text message would entitle its recipient to treble damages (there is no evidence supporting that assumption) the court finds a $175 settlement on a $1500 claim to be reasonable. The court expects that most class members would be happy to receive a $175 payment without the need for trial, especially for a text message that caused no actual damage. A $175 settlement on a $500 claim is reasonable as well. The class members who presumably have the best chance at proving willful TCPA violations, those who attempted to opt out, receive a $325 premium on the $350 payment for their two text messages. That premium is reasonable additional compensation in that fairly recognizes the higher likelihood of exemplary damages. Because the court finds it unlikely that any court would impose separate statutory damage claims for a single text message that violated the TCPA, Washington's Texting Statute, and Washington's ADAD Statute, the court considers the settlement to be a reasonable offer for Washington residents as well.

ORDER – 10

The principal problem with the settlement before the court is that the payments Lithia has offered to class members may well be much smaller than the $175 to $675 payments that the settlement trumpets. The maximum aggregate compensation to class members is $1.74 million. As noted, about 58,000 class members received Lithia's first text message, 48,000 received the second text message, and about 6,000 of those had attempted to opt out. Assuming that an equal fraction of each of these three subgroups participates in the settlement, they will receive the full settlement payout only if 8.5% or fewer participate in the class action. It would take $20.5 million to fully pay every class member in accordance with the settlement. The $1.74 million settlement fund Lithia has offered is 8.5% of that amount. If more than 8.5% of class members participate, Lithia will reduce their payments pro rata.

In the court's experience, 8.5% participation in a class settlement is well within normal range. This is because the vast majority of class members decline to respond to notices of class settlements, which normally require class members to send back a claim form. Class counsel in this case proposes to use that procedure: sending notice via U.S. mail and requiring class members wishing to claim a payment to return a postcard-sized claim form.

The court's concern, however, is that there is no obvious reason to require class members to submit claim forms, and thus no reason to factor in the low response rates that typically follow. Lithia has already admitted that it has addresses for every class member who received its first text message. What reason is there to require those class members to send in a form to certify that they received a text message?[4] No one addresses the question. The court will assume, for the moment, that Lithia's records do

---

[4] The claim form that counsel proposes to use is (to its credit) simple. It asks solely for a class member's name, address, home and cellular phone number, and includes the following statements: "I received ONE [or] TWO text messages from Lithia. (Circle one or two)," and "I received a second text message from Lithia after I attempted to opt out; YES [or] NO." There is no evidence, however, that Lithia lacks any of the information that class members are asked to provide on the form.

ORDER – 11

not identify who received a second text message nor who attempted to opt out. (There is, as the court has noted, no evidence regarding this issue). Even under this assumption, the parties already know that 58,000 class members are entitled to a $175 payment. It would cost $10.15 million to pay just these claims. The settlement fund is less than 20% of that amount.

This shortcoming raises many questions. Chief among them: is class counsel requiring class members to return a claim form merely to ensure a relatively low response rate and thus a relatively high likelihood that each class member who makes a claim will receive a full settlement payment? It is possible, of course, to argue that even a greatly reduced payment (in the range of $35, which is 20% of $175) is a reasonable settlement offer. But no one has made that argument. Rather than attempt to address all of the questions arising from the settlement's apparently superfluous[5] return-of-claim-form requirement, the court will require the parties to address them in the first instance. This section will conclude with a list of questions for the parties to answer.

The court finds that the $600,000 maximum attorney fee award and $10,000 incentive award to Mr. McClintic are, on a preliminary basis, reasonable. The court has already observed that the $600,000 fee cap is among the lowest it has seen. The court further notes that it has seen counsel in other cases claim substantially higher fees while offering substantially less meaningful relief to class members.

The form of notice that class counsel provides, which it proposes to mail to all class members, is essentially reasonable. Fed. R. Civ. P. 23(c)(2)(B) (requiring "best notice that is practicable under the circumstances, including all members who can be identified through reasonable effort"). Depending on the court's preliminary approval

---

[5] The claim form also requires class members to certify that they have read the release and accept it. This is purely superfluous. Class members who make no claim on the settlement are nonetheless bound by the release, even if they never read it, much less sign a statement accepting it. There is no need to require class members who make a claim to acknowledge the release.

ORDER – 12

decision, the court may require the parties to make appropriate modifications to the notice.

The court orders as follows. Before the court makes a final ruling on Mr. McClintic's motion for preliminary approval, Lithia and Mr. McClintic must meet and confer and then provide a joint statement answering the following questions:

1) How many of the class members are Washington residents?
2) What evidence supports the notion that some or all class members had given consent to receive text messages from Lithia?
3) Why did 10,000 fewer people receive the second text message from Lithia?
4) Although DME is not a party to this litigation, class members must release their claims against DME in order to claim a settlement payment. Nothing in the settlement agreement explains DME's role in the Lithia campaign or what consideration, if any, DME has offered in the settlement. Why should class members release claims against an entity that has offered them nothing?
5) Do Lithia's (or DME's) records precisely identify which class members received only a first message, which received a second message, and which received a second after making an attempt to opt out?
6) In light of the answer to the previous question, why is it necessary to require class members to return a claim form in order to receive settlement benefits?

## B.  Motion to Intervene

One seeking to intervene in a case must invoke either Rule 24(a), which governs intervention as of right, or Rule 24(b), which governs permissive intervention. As the jargon suggests, a court must permit intervention when a non-party satisfies the requirements for intervention as of right, provided the application to intervene is timely. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). An applicant for intervention as of right has the burden to establish four elements:

ORDER – 13

> (1) [that] it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) [that] the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) [that] the application is timely; and (4) [that] the existing parties may not adequately represent the applicant's interest.

*United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002).

Mr. McLaren cannot meet the second of the four requirements. His interest is in protecting his claims against Lithia. If he wishes to do so without participating in the settlement Mr. McClintic negotiated, he need only opt out. The court notes that although Mr. McLaren hopes to represent a class in his Oregon action, no class has been certified. The court need not consider the interests of a class that does not exist in considering Mr. McLaren's claim for mandatory intervention.

Permissive intervention, however, is an exercise of the court's discretion. *Donnelly*, 159 F.3d at 412 ("Even if an applicant satisfies th[e] threshold requirements, the district court has discretion to deny permissive intervention."). Mr. McLaren can intervene permissively only if he has a statutory right to do so or if he has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). There is no question that his TCPA claims in the Oregon action are essentially identical to the TCPA claims in this case.

Beyond the common issues his claims present, Mr. McLaren presents no compelling case for the court to exercise its discretion to permit him to intervene. The court has already dismissed his suggestion that Mr. McClintic erred by settling quickly. The court has already dismissed the suggestion that Mr. McClintic does not have adequate counsel. And, while the court has raised specific concerns about the adequacy of the settlement, Mr. McLaren raised none of them.[6]

---

[6] The intervention motion and the responses raise a host of disputes, including the substance of a telephone call that the mediator made to Mr. McLaren's counsel (with the consent of all parties to the mediation) after the mediation, Mr. McLaren's status as a former employee in Lithia's marketing department, and more. The court does not address these issues further, as it finds none of them germane to its decision on the intervention motion.

ORDER – 14

The sole issue that the court has yet to address is Mr. McLaren's contention that only he, not Mr. McClintic, can represent a subclass of those who attempted to opt out of the settlement. The problem with this contention is that there is no such subclass, nor is it necessary to have one. Parties can create subclasses, but no one has done so here. A court might mandate a subclass where it is apparent that one group has interests so divergent from the remainder of the class that separate representation is necessary. *See*, *e.g.*, *Amchem*, 521 U.S. at 626-28. There is, however, no need to create a subclass for every conceivable subgroup within a class. *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 958-59 (9th Cir. 2003) (explaining that class representatives can provide adequate representation even if they are not culled from every faction in a class); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993) (noting that right to opt out of class protects subgroups who believe that class representation is inadequate); *White v. Experian Info. Solutions, Inc.*, No. SACV 05-1070 DOC (MLGx), 2011 U.S. Dist. LEXIS 79126, at *61-65 (C.D. Cal. Jul. 15, 2011) (ruling that subclasses are not necessary where class representatives adequately represent all subgroups). For the reasons the court has already articulated, it is apparent that Mr. McClintic did not elevate his own interest (as a recipient of a single text message) over subgroups of class members who received an additional text message and who attempted to opt out. Mr. McLaren perhaps believes he could have negotiated a better deal if he had been part of the bargaining process, even though the record provides no support for that conclusion. Mere speculation about that possibility is no reason to put putative class members through the additional time and expense that Mr. McLaren's appearance in this action would engender. *See Hanlon*, 150 F.3d at 1027 (holding that district court had no need to take actions that would increase expenses so that "a few people would get a little more money"). The court's role is merely to ensure that a settlement is fair, reasonable, and adequate, not to ensure that it is the best deal possible. If it were otherwise, any class

ORDER – 15

member could ground litigation to a halt merely by insisting that he or she could have squeezed more money out of the defendant.

For these reasons, the court declines to permit Mr. McLaren to intervene in this action. Mr. McLaren's appearance as a party would only protract this litigation. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (noting that intervention motions compromise the "efficiency and economy of litigation which is a principal purpose of the [class action] procedure"). If putative class members share Mr. McLaren's view that Mr. McClintic did not provide adequate representation, the court expects that they will opt out of the settlement or object to it. Fed. R. Civ. P. 23(d)(1)(B)(iii) (permitting court to give class members the "opportunity to signify whether they consider the representation fair and adequate").

## IV. CONCLUSION

For the reasons stated above, the court DENIES Mr. McLaren's motion to intervene. Dkt. # 14. The court reserves ruling on Mr. McClintic's motion for preliminary approval. Mr. McClintic and Lithia shall, no later than November 2, 2011, provide a joint statement answering the questions the court posed in this order. The clerk shall RENOTE the motion for preliminary approval (Dkt. # 19) for November 2, 2011.

DATED this 19th day of October, 2011.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 16