HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN MCCLINTIC,

          Plaintiff,

    v.

LITHIA MOTORS, INC.,

          Defendant.

CASE NO. C11-859RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court a second time on Plaintiff Kevin McClintic's motion (Dkt. # 19) for preliminary approval of a class action settlement.  On October 19, 2011, the court issued an order (Dkt. # 31) making some findings and conclusions relevant to preliminary approval, but requiring additional submissions from the parties before resolving the remaining issues.  On November 2, 2011, the parties filed a joint statement in response to the order.  Dkt. # 32.  After consideration of the joint statement and the balance of the record, the court DENIES the motion for preliminary approval for the reasons stated below.  The parties may renew the motion in compliance with this order no later than February 17, 2012.

## II.  BACKGROUND

Defendant Lithia Motors, Inc. ("Lithia") operates a chain of car dealerships in the West and Midwest.  In April 2011, it began a marketing campaign wherein it sent nearly

ORDER – 1

58,000[1] people an identical text message promoting a Lithia sale.  About 4,000 of those people were residents of the State of Washington, including Mr. McClintic, a King County resident.  Lithia extracted the telephone numbers from various forms that its customers filled out when they bought vehicles.  Most of the forms in the record contain an area for a customer to add his or her "preferred contact phone numbers," although nothing in the forms explains for what purposes Lithia will use those numbers.  Dkt. # 32, Exs. A-B.  Lithia characterizes its customers' provision of telephone numbers as "voluntary," although the forms themselves do not suggest an option for a customer to decline to provide a phone number.  One form, which Lithia used in some Toyota sales, expressly discloses that Lithia may use phone numbers for marketing by text message, and asks for the customer's consent to do so.  Dkt. # 32, Ex. C.

DMEautomotive, LLC ("DME"), assisted Lithia in carrying out its text message marketing campaign.  Because it is not clear what aspects of that campaign DME executed, conduct that the court attributes to Lithia throughout this order may well be DME's conduct in whole or in part.

After sending the first batch of 58,000 messages, Lithia apparently reviewed its list of telephone numbers and determined that about 10,000 of them were on a national "do not call" list.  Lithia removed those numbers from the list before sending a second batch of identical messages shortly after the first.  In the time between the first batch and the second batch, about 6,000 recipients of Lithia's text messages sent a reply message requesting that Lithia send them no more messages.  Lithia apparently did not honor those requests.

Lithia ended its text message campaign after it sent the second batch of messages.

Mr. McClintic sued Lithia in King County Superior Court in April 2011, perhaps even before Lithia sent its second batch of text messages.  He asserted three Washington

---

[1] The court uses round numbers throughout this order.

ORDER – 2

law claims: one for violation of the law restricting the use of automatic dialing and announcing devices, RCW § 80.36.400; one for violation of the law restricting unsolicited commercial text messages, RCW § 19.190.060; and one for violation of the Washington Consumer Protection Act, RCW Ch. 19.86.  He also alleged a violation of the automated dialing restrictions of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b).  He hoped to pursue the TCPA claim on behalf of a class of all recipients of Lithia's text messages, and to pursue the Washington claims on behalf of a subclass of Washington recipients.  Lithia timely removed the case to this court in May 2011.

The parties immediately began to discuss settlement.  They mediated the dispute on July 5, 2011, and reached a settlement.  They proposed certifying a settlement class defined as follows:

> All persons within the United States who received a Text Message on their cellular telephones from Defendant or on Defendant's behalf, at any time during the Class Period,  including all persons within the United States who received a second Text Message from Defendant or on Defendant's behalf after attempting to opt out after receiving a first Text Message.

Lithia agreed to make direct payments to class members totaling $1.74 million.  Class members would lay claim to the settlement fund by returning a postcard-sized form indicating into which of three categories they fell: (1) those who received one message only; (2) those who sent a message attempting to stop Lithia from sending additional messages after the first, but nonetheless received a second message; and (3) those who received a second message without a previous attempt to stop it.  Claimants in the first category would receive $175.  Claimants in the second category would receive $675.  Claimants in the third category would receive $350.  In the event that class members failed to claim the entire $1.74 million fund, the balance would revert to the Legal Foundation of Washington as a *cy pres* recipient.  If class members claimed more than the $1.74 million fund, Lithia would reduce all payments pro rata.  Assuming equal

ORDER – 3

participation rates among the three categories of claimants, Lithia must reduce payments pro rata if more than 8.5% of class members make claims. Lithia agreed to pay Mr. McClintic's attorneys ("class counsel") up to $600,000 in fees and expenses, subject to court approval. It also agreed to pay Mr. McClintic an incentive award of up to $10,000, again subject to court approval. Lithia also promised to pay the costs of administering the settlement, up to $150,000. All told, Lithia agreed to pay up to $2.5 million in the settlement. In exchange, class members would release claims against both Lithia and DME arising from the text messages.

The settlement also includes Lithia's agreement to the entry of an injunction. The settlement agreement describes it as follows:'

> Defendant shall stipulate to the entry of an injunction that enjoins Defendant from violating the TCPA, 47 U.S.C. § 227, and/or RCW 19.190.060 through the unlawful use of an automatic dealing and announcing device ("ADAD") to deliver text messages for commercial solicitation to Class Members who have not provided express consent. Such injunction shall be null and void in the event of, or to the extent that, governing law as it now exists or may exist in the future would allow such activity.

Settlement Agreement, ¶ III.C.1. The court will discuss this injunction in its later analysis. For now it suffices to observe that the injunction would prohibit no specific conduct, it merely obligates Lithia to follow the law.

The parties first submitted a motion for preliminary approval of their settlement in August 2011. In its October 2011 order, the court found on a preliminary basis that the proposed settlement class satisfied the four prerequisites of part (a) of Federal Rule of Civil Procedure 23 ("Rule 23"). The court found that the proposed class satisfied the "superiority" requirement of Rule 23(b)(3), but required additional information before it could determine if it satisfied the requirement that common issues of fact and law predominated over individualized questions. The court also required additional information to assess whether the proposed settlement was "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

ORDER – 4

The parties' joint statement addressed many of the concerns the court raised in its prior order. The court now considers their preliminary approval motion a second time.

### III.  ANALYSIS

For reasons the court will now explain, the court finds that the proposed class settlement satisfies the requirements of both Rule 23(a) and Rule 23(b)(3). It also finds that while the settlement advances substantially toward a resolution that is fair, reasonable, and adequate, several obstacles prevent the court from granting preliminary approval. Because it appears to the court that the parties can, if they choose, remove those obstacles, the court will permit them to renew their motion for preliminary approval at their option.

The parties' agreement to settle this matter is not a sufficient basis for approving the settlement. The settlement would require the court to certify a class and dispose of the claims of its members. The court has an independent obligation to protect class members. *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). Even for a class certified solely for settlement, the court must ensure that the class and its proposed representatives meet the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In addition, the court must ensure that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court has already made several findings relevant to preliminary approval in its October 2011 order. It will not repeat those findings, except where necessary to give context.

The parties' most recent submission convinces the court that common issues of fact and law will predominate in this action. Lithia's test message campaign consisted of only two "batches," the first a set of identical text messages to about 58,000 people, and the second a set of identical text messages to about 48,000 people. Each message targeted a Lithia customer who had provided Lithia with contact information, including a telephone number, in conjunction with a prior vehicle purchase. The forms on which

ORDER – 5

customers provided that information were not identical.  This matters because one of the critical issues the parties would have litigated is whether customers consented to receive Lithia's text messages.  In some cases, it appears they did so explicitly.  In other cases, their written consent is questionable at best.  Moreover, Lithia claims that some customers gave consent verbally in conversations with its employees.  These issues of consent would be the primary individualized issues at a trial.  The court finds, however, that common questions arising from Lithia's marketing campaign predominate.

The parties have also alleviated the court's primary concern about the adequacy of the benefits the settlement makes to class members.  In its prior order, the court explained its conclusion that the upper limits of the payments to each of the three categories of class member claimants were, on their face, adequate compensation given the nature of Mr. McClintic's claims.  But, if more than 8.5% of class members were to participate in the settlement, Lithia would reduce all payments pro rata so that it paid no more than $1.74 million directly to class members.  If, for example, *every* class member made a valid claim on the settlement, each would receive payments of only 8.5% of the sums the parties tout in the settlement agreement.  In that case a person with a valid claim for a single text message would receive $14.87 rather than $175.  In the court's experience, the simple act of requiring class members to submit a claim form insures that most of them will not do so.  As the court pointed out in its prior order, an 8.5% participation rate is well within the range of what the court would expect.  The court's concern, however, was that it saw no reason to require class members to submit a claim form, because Lithia's records seemed to already identify the class members who received each of its text messages as well as who had attempted to stop Lithia from sending a second message.  A claim form is superfluous where Lithia already knows who has valid claims.

The parties now explain that while they can identify to whom Lithia *sent* text messages without the aid of a claim form, they cannot verify who *received* those text

ORDER – 6

messages absent a claim form.  Although Lithia acknowledges that it is likely that most of the customers received the messages it sent,[2] there are many reasons that some messages would not have reached their intended recipients.  Customers may have later abandoned the phone numbers they provided, provided inaccurate numbers, or provided numbers that could not receive text messages.  Because Mr. McClintic's claims depend on proof of receipt of a text message, the court finds it reasonable to require class members to submit a claim form.  That requirement, in turn, is likely to ensure that class members who make claims receive adequate payments.[3]

The court concludes that the injunction to which Lithia has agreed is valueless. The injunction does not prohibit any specified practice.  It does not, for example, require Lithia to stop sending text messages to class members or require Lithia to obtain new and unambiguous consent before sending more messages.  The injunction merely requires Lithia to follow the law with respect to text message solicitations.  At substantial risk of stating the obvious, the court observes that Lithia is already required to follow the law. The parties have made no showing that the injunction would provide a benefit to class members.  If the parties continue to pursue settlement, they may wish to remove this injunction as a mandatory component of their agreement.  The court is unlikely to enter a meaningless injunction.

With these concerns addressed, the court concludes that the framework of the parties' agreement describes a class settlement that the court could preliminarily approve. There are several details, however, that prevent the court from giving preliminary approval at this time.  The court now lists them.

---

[2] Indeed, Lithia can be certain that at least 6,000 people received its first text message, because they sent reply text messages in an attempt to stop Lithia from sending another message.

[3] The court's prior order considered the proposed $175, $350, and $675 payments in light of the Washington and federal claims each class member could assert.  The court concluded the payments were adequate.  The court does not repeat its discussion here.

ORDER – 7

First, the settlement unnecessarily provides for the distribution of settlement proceeds to the Legal Foundation of Washington ("LFW") as a *cy pres* recipient. If relatively few class members participate in the settlement, such that their payments do not exhaust the $1.74 million, Lithia will distribute the remainder to LFW. The parties do not explain this choice. The settlement provides for a pro rata decrease to each class member's payment if too many of them participate; it could just as easily provide for a pro rata *increase* to each class member's payment if too few of them participate. *Cy pres* payments are important where practical considerations prevent the distribution of funds directly to class members. *See Naschin v. AOL, LLC*, No. 10-55129, 2011 U.S. App. LEXIS 23244, at *8 (9th Cir. Nov. 21, 2011). In this case, the only impediment to full distribution of the $1.74 million to class members is the artificial payment cap the parties have imposed. *See id.* at *11 (noting court's obligation to consider interests of class members when considering *cy pres* proposal). The parties do not explain why they wish to cap relief to class members in favor of *cy pres* relief. In a case like this one, *cy pres* payments ought to be limited to a distribution of money that the parties cannot distribute to class members with reasonable efforts. That would include, for example, settlement checks that are returned or that class members do not cash within a reasonable time.

Second, the settlement agreement ensures that class members will receive no direct benefit from the amounts Lithia has agreed to pay class counsel, for settlement administration costs, and for Mr. McClintic's incentive award. Lithia has agreed to pay up to $2.5 million in this settlement, but the parties have agreed in advance that Lithia will pay no more than $1.74 million directly to class members. The rest will go to class counsel (up to $600,000), to settlement administration (up to $150,000), and to Mr. McClintic (up to $10,000). If the court enters smaller attorney fee and incentive awards, or settlement administration costs are lower than $150,000, the remainder of this money will remain in Lithia's hands. The Ninth Circuit has recently emphasized that such

ORDER – 8

1   agreements are inherently suspect.  *In re Bluetooth Headset Prods. Liability Litig.*, 654

2   F.3d 935, 949 (9th Cir. 2011).

3          Third, class members who do not opt out of the settlement must release claims not

4   only against Lithia, but against DME.  DME is not a named party in this litigation, which

5   is not itself an impediment to the proposed release.  In their recent joint statement,

6   however, the parties reveal that DME will make an unspecified financial contribution to

7   the settlement fund.  The settlement agreement makes no mention of DME's contribution.

8   Rule 23(e)(3) requires parties to disclose all agreements they make in connection with a

9   settlement proposal.  They have not complied with the rule with respect to whatever

10  agreement they reached with DME.  DME need not admit fault, but the parties must

11  disclose its contribution to the settlement.

12         Fourth, the settlement agreement includes a provision for a website to assist in

13  informing class members about the settlement and other events in this litigation.  For

14  reasons the parties do not explain, however, they propose to keep the website active for

15  only sixty days.  Settlement Agreement ¶ III.C.6(c).  This artificial limit does not serve

16  the interests of class members.

17         Fifth, as the court noted in its prior order, the release of claims that the parties

18  propose to bind class members is virtually incomprehensible.  The court will not approve

19  any settlement unless it is reasonably likely that a class member without the assistance of

20  an attorney can comprehend what he or she is releasing.[4]

21         Sixth, by mailing class members a postage-prepaid claim form, the parties will

22  make it easy for class members to submit claims.  The parties do not make it as easy for

23  class members to opt out of the settlement.  To opt out, one must print a form from the

24  settlement website and mail it at his or her own expense to the settlement administrator.

25  It would be simple, for example, to add the option to opt out to the same postage-prepaid

---

[4] The parties agreed in their joint statement to remove a superfluous acknowledgement of the
release from their proposed claim form.

ORDER – 9

card containing the claim form.  The parties make it even harder to object to the settlement.  They propose to require objectors to pay to mail their objections to class counsel, Lithia's counsel, and the court.  There is no obvious reason that the parties could not designate a single recipient for objections, and then distribute the objections to the parties and the court after the objection deadline.  One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object.

Seventh, for class members who wish to object, the parties impose a host of restrictions on the content of the objection, including a statement that an "objection will not be valid if it only objects to the Lawsuit's appropriateness or merits."  Settlement Agreement ¶ 10.  The court will be the sole judge of the validity of an objection.  Again, a hallmark of a reasonable settlement is one that encourages participation by making all forms of participation reasonably accessible to class members.

Except where noted, none of the concerns that the court has listed, standing alone, is fatal to the settlement.  Collectively, however, they lead the court to conclude that the settlement is not appropriate for preliminary approval.  If the parties wish to modify their settlement to address those concerns, they may submit a renewed motion for preliminary approval no later than February 17, 2012.  If the parties choose this option, they need not repeat arguments from their prior submissions or duplicate evidence that is already part of the record.  They need only explain to the court how they have chosen to address the concerns identified in this order.  They also need not revise the proposed forms of notice they have submitted, as the court will perform the initial revision if it grants preliminary approval.  If the parties do not submit a renewed motion, the court will set a case management schedule, including a trial date and a deadline for a class certification motion.

ORDER – 10

1

## IV.  CONCLUSION

2
       For the reasons stated above, the court DENIES the parties' motion for

3
preliminary approval.  Dkt. # 19.  The parties may renew their motion in accordance with

4
this order no later than February 17, 2012.

5
       DATED this 12th day of January, 2012.

6

7

8

                                           The Honorable Richard A. Jones

9
                                           United States District Court Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 11